

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

FILED

2013 DEC -5 P 3: 29

US DISTRICT COURT
Fax (203) 773-5376
www.justice.gov/usao/ct

*Connecticut Financial Center*
*157 Church Street, Floor 23*
*New Haven, Connecticut 06510*

December 5, 2013

Alex J. Bourelly, Esq.
Baker Botts, L.L.P.
The Warner
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400

Re:     <u>United States v. Conopco, Inc. d.b.a. Unilever Home & Personal Care USA</u>
        **Criminal No.: Information**   3:13 C R 2 2 3 ( R N C )

Dear Mr. Bourelly:

This letter confirms the plea agreement entered into between your client, Conopco, Inc. dba Unilever Home & Personal Care USA (the "defendant" or "Unilever"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEAS AND OFFENSES

The defendant agrees to waive its right to be indicted and will plead guilty to a two-count Information charging it with knowingly violating, or causing to be violated, the Clean Water Act, in violation of 33 U.S.C. § 1319(c)(2)(A).

The defendant understands that to be guilty of Count One, knowingly violating, or causing to be violated, conditions and limitations of a discharge permit issued by the State of Connecticut, in violation of 33 U.S.C. § 1319(c)(2)(A), the following essential elements of the offense must be satisfied:

1.      The defendant violated or caused to be violated conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to 33 U.S.C. § 1342, that is, Unilever bypassed portions of its wastewater treatment system in violation of a National Pollutant Discharge Elimination System ("NPDES") permit issued by the State of Connecticut; and

2.      The defendant acted knowingly.

1

The defendant understands that to be guilty of Count Two, knowingly violating, or causing to be violated, conditions and limitations of a discharge permit issued by the State of Connecticut, in violation of 33 U.S.C. § 1319(c)(2)(A), the following essential elements of the offense must be satisfied:

1. The defendant violated or caused to be violated conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to 33 U.S.C. § 1342, that is, Unilever failed to notify the Connecticut Department of Environmental Protection within two hours of becoming aware of a bypass of Unilever's wastewater treatment system, in violation of an NPDES permit issued by the State of Connecticut; and

2. The defendant acted knowingly.

## THE PENALTIES

Each offense carries a maximum penalty of five years' probation and a fine of $500,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $500,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $400 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty pleas are accepted.

Finally, unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of a fine amount not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. §§ 3572 (h), (i) and 3612(g).

### Restitution

In addition to the other penalties provided by law, the Court may order the defendant to make restitution. The parties agree that no restitution is due in this case.

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office.

Application of the Sentencing Guidelines

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range

The parties agree that the applicable Sentencing Guidelines are found in U.S.S.G., Chapter 8. In following the application instructions outlined in U.S.S.G. § 8A1.2, the parties agree that in this case involving environmental crimes any criminal fine is governed by the generalized sentencing considerations outlined in U.S.S.G. § 8C2.10.

Plea Agreement Pursuant to Rule 11(c)(1)(C)

The defendant and the Government agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the following sentence is a reasonable and appropriate disposition of this case: (1) the defendant shall pay a criminal fine of $1 million, payable to the Clerk of the Court within 30 days of sentencing; and (2) the defendant shall be placed on probation for a period of three years from the date of sentencing, during which time the defendant shall comply with the Special Conditions of Probation set forth in Appendix A of this Plea Agreement. The parties agree that this sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing in light of the factors set forth under 18 U.S.C. § 3553(a).

In accordance with Fed. R. Crim. P. 11(c)(1)(C), if the Court accepts this plea agreement, the Court must include the agreed-upon disposition in the judgment. Pursuant to Fed. R. Crim. P. 11(c)(5), if the Court rejects this plea agreement or the agreed-upon sentencing stipulation, the defendant shall be afforded the opportunity to withdraw its guilty pleas. The defendant understands that it has no right to withdraw its guilty pleas as long as the Court imposes a sentence consistent with the terms of the stipulated sentence. The defendant further understands that if the Court rejects the plea agreement or the agreed-upon sentencing stipulation, the Government may deem this plea agreement null and void.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Information to the Court

The parties expressly reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case, which is the sentence described above. In

particular, the defendant reserves the right to bring to the Court's attention the fact that Unilever has made a charitable donation in the amount of 3.5 million dollars to the Connecticut Statewide SEP Account, to be used as follows:

1.   $2.5 million to establish the Connecticut Resiliency and Climate Adaptation Center as described in Connecticut Special Act No. 13-9, June 6, 2013.  The Center will conduct research, outreach and education projects to guide the development of technologies and regulatory provisions that increase the protection of ecosystems, coastal properties and other lands and attributes of the state that are subject to the effects of rising sea levels.

2.   $500,000 to fund various environmentally beneficial projects proposed by the Town of Clinton, Connecticut and approved, in writing, by the Commissioner of Energy and Environmental Protection.  Eligible projects will promote one or more of the following goals: smart growth, transit oriented development, open-space acquisition, low-impact development, brownfield redevelopment and/or energy efficiency.

3.   $500,000 to design and construct a fishway at the Chapman Mill Pond in Clinton, Connecticut.

Any unexpended funds will be maintained in the Connecticut Statewide SEP Account to be used by the Connecticut Department of Energy and Environmental Protection for open-space acquisition and/or the planning, development or implementation of climate adaptation strategies.

It is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's background, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to its file, with the exception of grand jury material.

Cooperation

The defendant agrees to continue to cooperate truthfully and completely with the Government in its investigation of possible violations of federal and state law and in any trial or other proceeding arising out of the investigation of the conduct set forth in the Stipulation of Offense Conduct.  In particular, the defendant understands and agrees that its cooperation obligations will require it to (i) provide access to original, non-privileged documents and records, and (ii) make reasonable efforts upon request and reasonable notice by the United States Attorney, to have defendant's directors, officers, and employees make themselves available for interviews by law enforcement agents and for attendance at legal and judicial proceedings, including grand jury sessions, trials, and other court hearings.

4

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that it has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that it committed the offense set forth in the information before an indictment could be returned. The defendant expressly acknowledges that it is knowingly and intelligently waiving its right to be indicted.

### Waiver of Trial Rights and Consequences of Plea

The defendant understands that it has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent it.

The defendant understands that it has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against it, the right not to be compelled to incriminate itself, and the right to compulsory process for the attendance of witnesses to testify in its defense. The defendant understands that by pleading guilty it waives and gives up those rights and that, if the pleas of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that if it pleads guilty, the Court may ask it questions about each offense to which it pleads guilty, and if it answers those questions falsely under oath, on the record, and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making false statements.

### Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

The defendant acknowledges that under certain circumstances it is entitled to challenge its conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255, the conviction or sentence imposed by the Court if that sentence does not exceed a three year term of probation subject to both the standard conditions of probation and those delineated in Appendix A and a fine of one million dollars, even if the Court imposes such a sentence based on an analysis different from that specified above. The defendant acknowledges that it is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's pleas of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant

to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution.  The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGEMENT OF GUILT; VOLUNTARINESS OF PLEA

The defendant acknowledges that it is entering into this agreement and is pleading guilty freely and voluntarily because it is guilty.  The defendant further acknowledges that it is entering into this agreement without reliance upon any discussions between the Government and it (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges its understanding of the nature of the offense to which it is pleading guilty, including the penalties provided by law.  The defendant also acknowledges its complete satisfaction with the representation and advice received from its undersigned attorney.  The defendant and its undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority.  The defendant acknowledges that no representations have been made to it with respect to any civil or administrative consequences that may result from these pleas of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved.  Finally, the defendant understands and acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving it.

## COLLATERAL CONSEQUENCES

The defendant further understands that it will be adjudicated guilty of each offense to which it has pleaded guilty and may be deprived of certain rights.  The defendant understands that the Government reserves the right to notify any state or federal agency by whom it is licensed, or with whom it does business, of the fact of its conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty pleas, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of all federal violations of its National Pollutant Discharge Elimination System permit requirements and other wastewater management and discharge requirements of the Clean Water Act that are both known to the Government and occurred at the Unilever facility in Clinton, Connecticut, which conduct forms the basis of the Information in this case.

6

The defendant understands that if it violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement.  If the agreement is voided in whole or in part, defendant will not be permitted to withdraw its pleas of guilty.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

ACTING UNITED STATES ATTORNEY
DEIRDRE M. DALY

RAY MILLER
ASSISTANT UNITED STATES ATTORNEY

PETER W. KENYON
SPECIAL ASSISTANT U.S. ATTORNEY

The defendant certifies that it has read this plea agreement letter and its attachment(s) or has had it read or translated to it, that it has had ample time to discuss this agreement and its attachment(s) with counsel and that it fully understands and accepts its terms.

STEVEN M. RAPP                                    12/5/2013
For the Corporate Defendant                       Date

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client, who advises me that it understands and accepts its terms.

ALEX J. BOURELLY                                  12/5/2013
Attorney for the Defendant                        Date

7

APPENDIX A
SPECIAL CONDITIONS OF PROBATION

1.   Periodic Environmental Compliance Inspections of All Manufacturing Locations Located in the United States

During the three year term of probation, each facility listed below must be audited at least once by an outside party retained by the defendant to ascertain compliance with federal and state environmental laws. On an annual basis during the term of probation, the President of Conopco, Inc. shall identify to the Court, through the United States Probation Office and the United States Attorney, the facilities that have been subject to such audits. In addition, the President shall provide a non-privileged report describing the results of each audit relating to Clean Water Act and NPDES permit compliance and confirming that corrective actions are being taken to address any material regulatory findings associated with Clean Water Act and NPDES permit compliance.

Waterbury, VT (Plant)
St. Albans, VT (Plant)
Covington, TN (Plant)
Clearwater, FL (Plant)
Hammond, IN (Plant)
Jonesboro, AK (Plant)
Kilbourn, IL (Plant)
Owensboro, KY (Plant)
Sikeston (North), MO (Plant)
Sikeston (South), MO (Plant)
Stockton, CA (Plant)
Sunnyvale, CA (Plant)
Suffolk, VA (Plant)
New Century (Olathe), KS (Plant)
Baltimore, MD (Plant)
Independence, MO (Plant)
Jefferson City, MO (Plant)
Raeford, NC (Plant)
Henderson, NV (Plant)
Harrisburg, PA (Plant)

2.   Employee Training

Within one year of sentencing, the President of Conopco, Inc. shall certify, in writing, to the Court, through the United States Probation Office, and the U.S. Attorney that all employees of the facilities listed in Paragraph 1 above who perform or manage work subject to environmental compliance requirements have received basic environmental compliance training. Further, the defendant shall certify to the Court and the U.S. Attorney that all of its employees

8

outside of the designated facilities who are responsible for advising the listed facilities with respect to mandatory notifications to be made to state and federal environmental agencies have completed additional training to ensure they understand the legal notification requirements under applicable environmental laws.

3.    Changes in Corporate Structure

      In the event that any facility listed in paragraph 1 above is no longer owned by Conpoco, Inc. or its subsidiaries, but remains affiliated with Unilever U.S. Inc., then a corporate official comparable to the President of Conopco, Inc. shall be identified to the Court, through the United States Probation Office and the United States Attorney, and shall assume responsibility for compliance with paragraphs 1 and 2 for the affected facility.  In the event that any facility listed in paragraph 1 is closed, sold or otherwise decommissioned and is no longer affiliated with Unilever U.S. Inc., then subsequent obligations pursuant to paragraphs 1 and 2 for that facility shall end.

## STIPULATION OF OFFENSE CONDUCT

The defendant, CONOPCO, INC. dba UNILEVER HOME AND PERSONAL CARE USA (hereinafter "Unilever"), and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the Information:

From at least 2004, through and including 2010, the defendant operated a manufacturing facility in Clinton, Connecticut (hereinafter "the Clinton facility"). The defendant utilized the Clinton facility to produce a variety of health and beauty products for sale in the United States.

In order to treat the industrial wastewater generated by Unilever's manufacturing processes, the Clinton facility contained an on-site wastewater treatment system. As originally designed, that system discharged treated industrial effluent to Hayden Creek pursuant to a National Pollutant Discharge Elimination System (NPDES) permit issued by the Connecticut Department of Energy and Environmental Protection (CT DEEP) under delegation from EPA. The terms and conditions of Unilever's NPDES permit prohibited the company from bypassing any portion of its wastewater treatment system without prior written approval from CT DEEP, unless the bypass was unanticipated, unavoidable, and necessary to prevent loss of life, personal injury or severe property damage. The permit further required that Unilever notify CT DEEP within two hours of becoming aware of any bypass and within five days submit a written report including the cause of the problem, duration including dates and times, and corrective action taken or planned to prevent other such occurrences.

In 2002, CT DEP reissued Unilever's NPDES permit, requiring Unilever to relocate or eliminate its process wastewater discharge in order to protect Hayden Creek. Under the terms of the reissued permit and a subsequent CT DEEP Consent Order, Unilever was authorized to continue discharging treated wastewater to Hayden Creek until the relocation or elimination could be accomplished. On or about October 31, 2008, Unilever represented to the CT DEEP that it had completed construction of an advanced reverse osmosis and micro-filter wastewater treatment unit and had eliminated all industrial and sanitary wastewater discharges from the Clinton Facility to Hayden Creek.

On Friday, December 5, 2008, at approximately 3:00 pm, a third party contract employee noted that a hose was being used to bypass the industrial process waste water treatment system by allowing the contents of a 4,500 gallon vacuum filter filtrate tank to discharge directly to a storm drain pipe that led to Hayden Creek. Upon making this discovery, the contract employee alerted the junior wastewater treatment operator for the Clinton facility and showed him the hose and ongoing wastewater bypass. These two individuals then shut off the hose at approximately 3:10 pm.

At 3:30 pm, the contract employee notified his non-Unilever supervisor about his observations, and was urged to notify the Safety, Health and Environmental (SHE) manager of the Clinton facility. The SHE manager received a call from the contract employee between 3:30 and 3:45 pm. After asking the contract employee to send her an email describing his

10

observations, the SHE manager went to the waste treatment area between 3:45 and 4:00 pm and observed foamy water and signs of recent discharge at the inlet of the storm drain pipe. The SHE manager notified the plant manager, took pictures, and observed the downstream oil/water separator. Despite the requirement that CT DEEP be notified within two hours of the detection of such a bypass, Unilever chose not notify the CT DEEP within this two hour window.

On Saturday, December 6, 2008, the SHE manager referred the matter to counsel for Conopco for further investigation and notification of CT DEEP.

On Sunday, December 7, 2008, in response to the SHE manager's request, the contract employee sent the SHE manager an email detailing his observations of the bypass and stating "[t]his is not the first time I've seen this done at your facility, I've seen this on two previous occasions. At that time, however, I was still trying to learn the system as quickly as possible and didn't understand the significance of what I was viewing." In the email, the contract employee opined that the senior operator had performed the intentional bypass and had "done this on several occasions, and perhaps more often than we care to know."

On Monday, December 8, 2008, three days after being notified of the illegal discharge, the Unilever plant manager interviewed the two wastewater treatment operators and the contract employee who had initially discovered the bypass. All three individuals denied any responsibility for the bypass and indicated that they did not know who was responsible, although the contract employee again stated that he believed that the senior operator was responsible. From these interviews, the plant manager did not determine who was responsible for the bypass or confirm whether any prior bypasses had occurred.

Later on December 8, 2008, the plant manager sent an email to his superior within the organization indicating that "we had somebody by pass [sic] the waste treatment process and put water into the storm water system . . .working with legal on how to handle the DEP, if at all."

Also on Monday, December 8, 2008, a DEEP compliance inspector was on-site at the Clinton facility for an unrelated reason. Despite the fact that DEEP was at the Clinton facility, Unilever did not notify the on-site DEEP representative of the bypass that occurred on December 5, 2008.

On or about December 10, 2008, five days after detecting the bypass, Unilever notified the CT DEEP for the first time of the discharge that occurred on December 5, 2008. This written notification occurred during the five day time period allowed for the mandatory written report. Unilever disclosed the December 5, 2008 bypass to the U.S. Environmental Protection Agency (EPA) in a written submission dated December 16, 2008.

A sample of wastewater taken from the filtrate tank at the request of CT DEEP in February, 2009 showed fecal coliform at a level too numerous to count and biochemical oxygen demand (BOD) more than four times the level typically found in strong domestic wastewater sources. Both fecal coliform and BOD levels were significantly above Unilever's NPDES

permit limits.

The defendant conducted its own internal investigation of the December 2008 incident. In subsequent conversations and written communications with federal and state authorities throughout 2009 and 2010, Unilever stated that it had been unable to conclusively determine who was responsible for the bypass; Unilever characterized the incident as an isolated, "one-off" incident that may have been the work of unknown "vandals."

The EPA investigation, however, did not support the characterization offered by Unilever. The junior operator told the EPA that he intentionally bypassed the system on December 5, 2008. Further, after an extensive investigation, the EPA concluded that for an extended period of time, perhaps as long as 2 years, prior to December 5, 2008 the wastewater treatment operators routinely bypassed the system on a weekly basis, discharging approximately 1,500 gallons of partially treated wastewater at a time to the storm drain that led to Hayden Creek. EPA's investigation established that these bypasses were concealed from and unknown to Unilever management, including the SHE manager and the plant manager. Unilever was aware, however, of problems with the wastewater treatment system and the operators, including the following:

- The strength, flow, and variability of the Clinton facility's wastewater made it difficult to treat. Wastewater treatment system upsets and capacity limitations often necessitated that wastewater be trucked off-site for treatment at a cost of approximately $1500 per truckload. The treatment system operators had authority to call for trucking if needed for wastewater treatment.

- Portions of the treatment system were old and in need of repair and maintenance. Equipment replacements and system improvements recommended by outside consultants were not fully implemented, although some corrective measures were completed.

- The treatment system required constant operator attention and adjustment. Nevertheless, during 2008, the senior operator was often absent. The junior operator did not possess the required license or training to qualify him to operate the system independently for extended periods of time without supervision, yet he was allowed by Unilever to operate the system.

- Although the waste treatment operators were licensed by the State of Connecticut and subject to applicable permit requirements, they required oversight to properly operate the plant. That oversight was inconsistent and the operators were allowed to act autonomously.

In December 2012 the defendant ceased manufacturing operations at the Clinton facility.

STEVEN M. RAPP
For the corporate defendant

RAY MILLER
Assistant United States Attorney

ALEX J. BOURELLY ESQ.
Attorney for the Defendant

PETER KENYON
Special Assistant United States Attorney

13